and we'll turn to the final argued matter on today's calendar, Blutreich v. North Shore Long Island Jewish Health System 20-1453. Ms. Blutreich. Did I pronounce your name correctly? That's fine. Yes, that's fine. Can I just put on the timer because I have five minutes and I'm not Thank you. Of course. I'll also be keeping track of your time. Okay. So my name is Anna Blutreich. I'm a board certified pathologist. I've certified in anatomic pathology, clinical pathology, and phytopathology. I have completed five years of residency training and three fellowships in my field of pathology. For eight years since 2013, when this case was filed, I have not been able to secure a full-time position in surgical anatomic pathology, which means finding out actual cancer cases and making diagnosis of other diseases under a microscope, for which I trained for many years. I currently oversee sexually transmitted disease labs for Planned Parenthood, actually, but I'm not actually practicing the pathology that I spent most of my training doing. This is a managerial position, and because of what these actions by North Shore LIJ, Dr. Rogers, and Winnesville Hospital, it's forced me to take many peripheral positions to try to keep my feet wet in my field so I could hopefully one day get back to practicing full-time. As I had trained, I worked at night in labs part-time as a professor, as a managerial, in these kind of sort of managerial positions. I wanted to bring to attention that this case was filed under the New York City Human Rights Law, Title VII, which should instruct some more leniency towards me, but I feel that Judge Ramos misinterpreted many of the facts in this case, and even from areas that were gray, in every area that was a little gray and could go either way, he favored the defendants. There's been some case irregularities that I wanted to point out. This case has been ongoing for eight years. There hasn't been like a speedy resolution for my career. My first lawyer, who I had for four years, Bernstein, was dismissed by the judge by writing a secret letter that I was unable to see, even though I was paying him regularly, and I had no recourse. The only law firm I was able to secure after that was the Spell Law Group, and during the discovery, I found out four months into discovery, they never signed the subpoenas for my deposition, so that only gave me two months to deliver subpoenas and only three weeks for the deposition. Then, unfortunately, the judge, Judge Bass, passed away. Before she passed away, she had written a decision that she wanted the magistrate, Judge Laraberger, who was familiar with the case, to issue the summary judgment on this that I waited a year for her to issue, but instead, this case was signed to Judge Ramos, who was unfamiliar with the case. He basically dismissed it within a month and a half after waiting eight years to have a jury trial. I feel that I have a right to a jury trial. This is what I had asked for. It's part of the Bill of Rights and the Seventh Amendment. I wanted to refute certain points that Judge Ramos faced his decision on. The crux of the case dismissal is that he claims that neither Dr. Rogers, who is the chair of Lennox Hill, nor Dr. Wall, the assistant chair or acting director, ever spoke to a real employer, but that's not true. Dr. Rogers actually testified that he spoke to Dr. Mark Friedman, who worked part-time for him in the blood bank, but he actually was a full-time attending at Beth Israel. I had interviewed there for a hematopathology fellowship before he had spoken to Dr. Rogers. Dr. Rogers claims in his deposition that he only told him that he was in good standing, but in fact, Dr. Rogers had told the reference checker that he couldn't give more information about why he left this Lennox Hill position because of the separation agreement, which I feel is showing retaliatory animosity. He knew that I had reported him for sexual harassment, and he never subsequently got another contract from North Shore LIJ when they merged, so he had a reason to try to harm me. Was there any evidence that Dr. Rogers spoke to an actual prospective employer, as opposed to just the reference checker? Yes, in his depositions. I have it in my appendix that I actually say that he spoke to Dr. Friedman and that he told him that I left because I was in good standing, and he claims that Dr. Friedman was just questioning him in a friendly way and that it wasn't a reference, but I didn't even know Dr. Friedman. The only reason he was asking about me was because I had interviewed with him for a position in hematopathology as a fellow at Beth Israel, where he was employed full-time. I'm trying to find what exhibit that is, but it's in Dr. Rogers' deposition. I can find it. I can find it for you in a second, but I don't know which exhibit it is, but it's definitely in here that he claims. Is there anything else you want to say? Yes, I have a few more points. The title. Judge Ramos claims that I was aware before I was fired that my title had been changed from pathologist to assistant pathologist, and I wanted to point out that the only thing I had seen before I was fired was this odd memo about the flu vaccine, and my name was listed as assistant pathologist error because my original contract with Lenox Health Pathology PC said pathologist. I also had received a renewal contract when we merged from North Shore LIJ, which they subsequently rescinded. That listed me as a full-time pathologist on the contract, which is in my exhibits. The other exhibit I showed was Dr. Crawford, who actually was the chairman after the merger of all the departments under Northwell for pathology, had an email that I submitted as attending pathologist, and the title of the email was titles for faculty at Lenox Hill. Another thing was the separation agreement. Ramos claims that they followed the separation agreement that we had signed. However, I disagree. All non-credentialing references, which are references that would come before I get the job, and then, you know, they credential me after they offer me the position. We're supposed to go to Glenn Karunas, who was the head of HR at Lenox Hill, but he quit after two months. He never told anybody who was in the agreement that they were supposed to stay there and left because of the merger and semi-salary. Then, when I discovered that, they provided Emily Wiesenbach as an exploiting person. She disappeared for four months on maternity leave. She didn't notify anyone. There are emails showing that people try to contact her, like Sterling Backgroundcheck, for, you know, pre-credentialing references, and she wasn't answering them. Also, people refer to PeopleSoft. That's one of their saying that I left because of the merger, and I was following exactly what we had agreed upon. I was referring everyone, all the jobs I applied to, to Glenn and then Emily. Then, they also used this electronic service called the Verified Job System, which didn't provide a reason for my leaving, which was part of the agreement. It wouldn't give my salary. The dates of employment are in, you know, argument here, but they also mentioned that they flagged me for having a with no explanation, which is when I actually was a resident at LIJ, where I trained part of my residency at LIJ. It's not marked, so when an employer saw it, they thought I had some weird job there, and I got fired. I think we actually have the exhibits, and we got your filing, the written submission. Is there something that is not in those that you, maybe one big thing that you want to tell us, and then we'll hear from Mr. Sturgios. I was just hoping I could just make three quick points because I may not, there's so many details here that have gone on for eight years, and it'll just take me two more minutes. Okay, three quick points. I'll give you about a Okay, so the last thing about this verified job is that they forced all employers to pay a fee and give a PIN number, which didn't follow our agreement, and we tried to resolve this, and no one would fix it, and it kept getting, you know, jobs were getting lost. He also claimed that I secured so many temporary positions. I only secured one where I actually went to work in the facility, and that was in 2017, four years after this case was filed. He claims I never got any contract from any employer that I listed as those 12 employers, but I did get a contract through the temp agency, Comp Health, to work in Oregon at Asante Rogue, and then they rescinded it as soon as they started credentialing me, and then the last point I wanted to make is that Ramos claims that three months of credentialing for temp positions is okay and justifiable, but it isn't if it's a temp position, and you're covering a community hospital where there's one pathologist who gets sick. They need to bring somebody in quickly. It's a one-page form, and they expedite it, so my only thing is that I'm asking the court to reverse their decision of Judge Ramos and grant me a jury trial so I can try to regain my career as a surgical pathologist, and at this point, I have nobody else to turn to, and I feel that I've had all this training for years, and in the pandemic, I feel like my skills could be really used, but I can't use them because I've been blocked in so many ways, and I'm thankful. Thank you. Thank you very much. We'll hear from Mr. Sergios. Good afternoon, Your Honors. Peter Sergios for the defendants. May it please the court, this appeal is frivolous and should be dismissed. Plaintiff's main argument in this retaliation case, and that's what this is, it's a retaliation case, is that after leaving employment with the defendant hospital as a pathologist, she should have been rehired as a physician at any of 12 other places where she had applied. She wasn't. She says this was because defendants retaliatorily poisoned her chances, but she lacks any admissible evidence that defendants did anything to spoil her employment opportunities. She argues only from sheer speculation or rank hearsay. She also fails to overcome the legal presumption in this circuit that a retaliation claimant must show that any such conduct must have been the sole cause for why she didn't get the job she wanted. This she has not done. It's immaterial in this case who spoke to whom or where Dr. Friedman did work when Defendant Rogers got his call. The question is, what was said? The record evidence of that is how Defendant Rogers responded to his medical colleague who out of curiosity had asked why plaintiff had left North Shore. As he testified in his deposition, and that's Supplementary Appendix 206 and following, Dr. Rogers said only that plaintiff had left in good standing but couldn't say why. That's it. Nothing adverse, nothing negative, no reasonable jury could find otherwise. Not only that, they had that conversation months before she even applied at Beth Israel, which is where Dr. Friedman ended up. It is therefore illogical to suppose that Dr. Friedman was looking for a recommendation when he spoke to Dr. Rogers. As he told plaintiff once she did apply, the decision whether to employ her wasn't his to make. Defendant Rogers' testimony was under oath. Plaintiff's argument is only argument, not sworn testimony. There is no evidence of record contrary to that provided by Defendant Rogers. Plaintiff cites to none. As Judge Ramos concluded, plaintiff didn't show that defendants made a single negative reference about her to a single potential employer where she did apply, meaning an actual potential employer. The reference checker information doesn't count since there's no evidence that anything that was told to him reached anybody else. Nothing was, no evidence that any of his observations were passed on to any actual employer. Plaintiff also makes an issue over title, whether correctly or not reported by defendant hospital as assistant pathologist or as an attending, whatever the difference may be. What is clear is that plaintiff's title at defendant hospital, whenever reported, was the same all during her employment there. Therefore, there could have been nothing nefarious about personnel information made available to any employer. In fact, in the declaration plaintiff submitted below, she acknowledges that she knew she was an assistant pathologist. There's no evidence properly of record that any employer adversely was influenced by defendant hospital's reporting practices or by anything either defendant did. Plaintiff instead submits argument from prior counsel as to what her title should have been, demanding that it be changed. But under New York's public health law, a hospital cannot arbitrarily or on a whim change its healthcare professional's record. Plaintiff feels betrayed, victimized by unfair treatment from everyone around her, even by her own lawyer. But here, what plaintiff thinks is fair is not properly before the court. The facts in this case are clear and uncontroverted, irrelevant facts. The defendants have submitted the law, none of which has been contradicted or rebutted. There is no dispute of material fact. No effective employer of plaintiffs was given anything negative about her by defendants. They did nothing to prejudice her employment anywhere. In this- Thank you very much. Thank you. Defendants seek that the decision below be upheld with cause. Thank you very much. We will reserve the decision and thank you both for the arguments. That concludes today's oral argument calendar and I'll ask the clerk to adjourn court.